ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Central Diversified Contracting, LLC. | )  ASBCA No.  62585 |
| | ) |
| Under Contract No.  W9127N-19-P-0163 | ) |

APPEARANCE FOR THE APPELLANT:         Mr. Pete Draganic
                                                                          President

APPEARANCES FOR THE GOVERNMENT:   Michael P. Goodman, Esq.
                                                                        Engineer Chief Trial Attorney
                                                                      Nathaniel S. Canfield, Esq.
                                                                      E. Christopher Lambert, Esq.
                                                                        Engineer Trial Attorneys
                                                                        U.S. Army Engineer District, Portland

OPINION BY ADMINISTRATIVE JUDGE O'CONNELL

Appellant, Central Diversified Contracting, LLC (CDC), has elected the Board's Rule 12.3 procedures.  Under Rule 12.3(c), the Board's decision "will normally be short and contain only summary findings of fact and conclusions."  The Board conducted a one-day hearing on December 9, 2020, at which appellant's president, Mr. Pete Draganic, testified as the only witness.  Entitlement and quantum are before the Board.  The Board grants the appeal in part.

FINDINGS OF FACT

The facts are largely undisputed.  On September 30, 2019, appellant entered into a contract with the U.S. Army Corps of Engineers, Portland District, in the amount of $84,785 for the demolition and disposal of a portable floating fish collector (PFFC) at Cougar Dam and Reservoir in Lane County, Oregon.  The PFFC was "a unique, one-of-a-kind facility developed for the purposes of furthering research on the behavior of downstream migrants in the reservoirs found behind the dams . . . ."  The work was to be performed between October 14 and November 15, 2019.  (R4, tab 9 at 36, 51, 54)

CDC did not start work until October 25, 2019.  CDC was responsible for the first week of delay (October 14-18) because it failed to gain approval of its submittals. (R4, tab 26 at 196-97, tab 77)  The Corps was responsible for delaying the start from October 21 to 25 because its personnel were not available (R4, tab 31 at 229).  Despite

the late start, Mr. Draganic informed the Corps on November 4 in a text message that CDC was "on track to be wrapped up by or pretty close to Nov 15th"[1] (R4, tab 47).

On November 7, 2019, CDC reported to the government that the center section of the PFFC was heavier than represented. The Corps had informed bidders that it weighed 15,000 pounds but it was ultimately found to be 81,000. Among other things, CDC could not use the 180-ton crane it had planned on and had to bring a 400-ton crane to the remote site. (R4, tab 8 at 30, tab 19 at 155, tab 66 at 563)

On November 10, 2019, CDC requested $51,546 from the Corps, including $26,330 for increased crane costs based on an estimated three days of use, and $3,200 for a one-week telehandler (a shooting boom forklift) rental. In addition, it requested additional amounts for markup on the equipment, one-week of additional time on the project, and additional per diem expenses. (R4, tab 37 at 242)

On November 18, 2019, the parties entered into bilateral modification No. P00001 increasing the contract amount by $29,530. It provided in relevant part:

> 1. The purpose of this modification is to extend the period of performance end date from 15 November 2019 to 22 November 2019 and to mobilize a 400-ton crane to the site.
>
> 2. This modification constitutes compensation in full on behalf of the Contractor and its subcontractors and suppliers for all costs, direct or indirect, attributable to the changes specified herein and for performance within the time stated.

(R4, tab 10 at 83-84) The time granted by this modification proved to be insufficient and the CO later extended the completion date to November 25, 2019 (R4, tab 11).

On January 21, 2020, CDC submitted a claim to the contracting officer (CO) seeking $71,071.64. This amount included an additional $18,418.68 for the crane because CDC needed it for double the time estimated in the change request; $9,056.25 to cut the metal to a "truckable" size and transport it; and $1,836.71 for 10-days of rental

---

[1] Based on this text, CDC contends that all delay after November 15 was the fault of the Corps. The Board considers the phrase "by or pretty close to Nov 15th" to be inadequate to prove that CDC would have completed the work by November 15. Further, CDC's work plan submitted on October 1, 2019, showed that it would be working on site for 30 days - from October 17 to November 15, 2019. (R4, tab 18 at 140-41)

charges for the telehandler.  In addition, CDC sought delay damages of $30,000 for an additional 10 days on site, plus $1,760 for 10 days of food and lodging, and finally, $10,000 in emergency administrative hours to verify the weights and obtain the larger crane based on a rate of $250 per hour.  (R4, tab 1)  (After filing this appeal, CDC reworked these latter calculations by increasing the hourly rate to $375/hour, which increased the overall amount it sought to $88,196.64 (app. supp. R4, tab A01 at 2-3)).

The CO issued a final decision on May 26, 2020 (R4, tab 8).  While thorough, the CO reached some conclusions that the Board finds inconsistent.  His overall position was that modification No. P00001 compensated CDC for "all additional effort resulting from the larger center section of the PFFC" (*id.* at 32).  While the only work cited in the modification was mobilization of the larger crane, the CO contended that it covered mobilization, use, and demobilization of the crane, as well as the telehandler, and that CDC was not entitled to anything more.  Despite this, he awarded CDC a 15% markup ($3,949.50) for profit on the crane, but for some reason not on the telehandler.  Similarly, with respect to metal cutting and trucking, the CO contended that the modification covered the entire work effort but nonetheless agreed to pay CDC the $9,056.25 requested.  (*Id.* at 31-33)

With respect to the costs arising from an additional 10 days of work on site, the CO contended that these costs were also covered by modification No. P00001.  He further stated that the additional days spent on site beyond November 15, 2019, were due to CDC's failure to start until October 25, 2019, which he blamed entirely on CDC.  Finally, he also stated that CDC failed to provide any evidence that supported the $3,000 per day that it sought, such as hourly rate breakdowns, or a comparison of bid versus actual hours.  For similar reasons, he denied CDC's request for costs due to emergency administrative hours.  (R4, tab 8 at 32-34)

CDC filed a timely appeal on June 23, 2020.

DECISION

First, with respect to the $30,000 that CDC seeks for an additional 10-days on site and the $10,000 that CDC seeks for emergency administrative hours (or the post-filing recalculation based on $375/hour), the Board concludes that CDC has failed to prove its damages.  During the discussions of CDC's claim, the CO requested a breakdown of CDC's hourly rates and how the rates were established, CDC's planned hours per its bid, and the actual hours supported by timesheets or payrolls (R4, tab 6).  CDC failed to provide these documents to the CO or to the Board.  The Board agrees with the government that CDC has not proven it is entitled to these amounts.[2]

---

[2] During this time period (November 16-25), CDC worked on site from November 19-25, 2019 (that is, for seven days, not the 10 days claimed).  On

The Board does not, however, read modification No. P00001 to encompass "all additional effort resulting from the larger center section of the PFFC" as the CO stated in the final decision.  If the CO had intended this, we expect he would have stated so in the modification.  Instead, he used the much narrower language "mobilize a 400-ton crane."  This left the door open for additional payments.  Despite his contentions in the final decision, the CO did not really seem to believe that the modification was supposed to be the last word because he agreed to pay CDC more than $13,000.  His issuance of a second modification that further extended the completion date is also inconsistent with the contention that the first modification was all-inclusive.

The Board concludes that CDC is entitled to the following additional amounts:

| | |
|---|---|
| Additional crane costs: | $18,418.68 |
| Additional telehandler rental | $1,836.71 |
| Metal cutting and trucking | $9,056.25 |
| 5 days per diem x $176 | $880 |
| **TOTAL:** | **$30,191.64** |

### CONCLUSION

The Board sustains the appeal in part.

Dated:  January 5, 2021

*Michael N. O'Connell*
MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

two of the seven days, Mr. Draganic was the only CDC worker on site.  On five days, there was also an employee who was paid $22/hour (on two of these days he worked only 4.25 hours).  On one day there was also a day laborer who worked for 4.25 hours.  This does not support either the $3,000/day or the $375/hour claimed.  (R4, tabs 91-97)

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62585, Appeal of Central Diversified Contracting, LLC., rendered in conformance with the Board's Charter.

Dated: January 6, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals